1
2
3
4
5
6
7

8           UNITED STATES DISTRICT COURT

9           NORTHERN DISTRICT OF CALIFORNIA

10

11   KHARI MARK HICKS,                    Case No.  16-03270 BLF (PR)

             Petitioner,

12                                        **ORDER DENYING PETITION FOR**
        v.                                **WRIT OF HABEAS CORPUS;**
13                                        **DENYING CERTIFICATE OF**
                                          **APPEALABILITY**
14   RON RACKLEY, Warden,

15           Respondent.

16

17

18        Petitioner has filed a *pro se* petition for a writ of habeas corpus under 28 U.S.C. §

19   2254 challenging his state conviction.  The Court granted Respondent's motion to dismiss

20   the amended petition. (Docket No. 19), as a mixed petition, i.e., for containing exhausted

21   as well as unexhausted claims, (Docket No. 32), and thereafter granted Petitioner's motion

22   to strike the unexhausted claims and proceed solely on the exhausted claim that there was

23   insufficient evidence to support one of the convictions for human trafficking.  (Docket No.

24   34-2.)  Respondent filed an answer on the merits along with exhibits in support thereof.

25   (Docket No. 35.)  Petitioner filed a traverse.  (Docket No. 36.)  For the reasons set forth

26   below, the Petition for a Writ of Habeas Corpus is **DENIED**.

27   ///

28   ///

**I. BACKGROUND**

On July 23, 2013, Petitioner was found guilty by a jury in Alameda County

Superior Court of the following counts: (1, 5) human trafficking; (2, 9) pimping; (3,10),

pandering; (4) criminal threats; (6) kidnapping; (7) false imprisonment by violence; and (8)

assault with a firearm. (Ans. Ex. 1, Clerk's Transcript ("CT") at 255-63.[1]) The jury also

found true a firearm enhancement for the kidnapping. (CT 496.) On September 23, 2013,

the trial court sentenced Petitioner to an aggregate term of 29 years in state prison. (Ex. 3,

Reporter's Transcript ("RT") at 415-16.)

On December 29, 2014, the California Court of Appeal affirmed the judgment on

appeal. (Ex. 6.) The California Supreme Court denied a petition for review on March 11,

2015. (Ex. 8.)

Petitioner filed the instant federal habeas action on June 14, 2016.

**II. STATEMENT OF FACTS**

The following background facts are from the opinion of the California Court of

Appeal on direct appeal:

Antoinette Doe testified she was 18 years old in 2008 and living in
Oakland. She had previously been in foster care and lived in a residential
facility in Colorado from 2006 to 2008. Prior to that, she was made to work
as a prostitute at the age of 15.

Antoinette met defendant in 2008 when he approached her at a bus
stop. He introduced himself as Ray Vaughn. They spent the rest of that day
together and stayed at a hotel that night. The next day, he asked her if she
wanted to make some money working as a prostitute. She agreed. She
started working as a prostitute for him, giving him all of the money she
made by selling sex services. The couple also had a sexual relationship.
They lived in hotels and the money she made paid for their living expenses.

The first violent episode occurred in 2008 after Antoinette saw
defendant with another female in his van. Prior to that, she had believed she

---

[1] All references herein to exhibits are to the exhibits submitted by Respondent in support of
the answer, unless otherwise indicated. (Docket No. 35.)

2

was his only girl. He exited the van, chased her inside their hotel room, and choked her by placing his hand around her neck. After he left, she called an ambulance because she was having trouble breathing. He later picked her up from the hospital and they resumed their relationship. She continued working as a prostitute for him.

In May 2009, the police conducted a sting operation after Antoinette posted an ad on Craigslist for prostitution. Defendant drove her to a house where she was eventually contacted by law enforcement. During this time, other girls were also working for defendant. He sometimes asked Antoinette to train them on how to work as prostitutes. On one occasion, she encouraged a young girl to leave defendant because the girl was still a teenager and the prostitution lifestyle was "not worth it." She told the girl not to tell defendant what she had said, but shortly thereafter he came into the room and started choking her and hitting her, saying that she was "messing up" his money. He also hit her face with a belt and pointed a gun at her.

*People v. Hicks*, No. A139903, slip op. at 3-4 (Cal. Ct. App. Dec. 29, 2014); (Ex. 6, hereinafter "Op.").

## III.  DISCUSSION

### A.    Standard of Review

This Court may entertain a petition for a writ of habeas corpus "in behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States."  28 U.S.C. § 2254(a).  The writ may not be granted with respect to any claim that was adjudicated on the merits in state court unless the state court's adjudication of the claim:  "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."  28 U.S.C. § 2254(d).

"Under the 'contrary to' clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question

1   of law or if the state court decides a case differently than [the] Court has on a set of

2   materially indistinguishable facts." *Williams v. Taylor*, 529 U.S. 362, 412-13 (2000).

3   "Under the 'unreasonable application' clause, a federal habeas court may grant the writ if

4   the state court identifies the correct governing legal principle from [the Supreme Court's]

5   decisions but unreasonably applies that principle to the facts of the prisoner's case." *Id*. at

6   413.

7        "[A] federal habeas court may not issue the writ simply because that court

8   concludes in its independent judgment that the relevant state-court decision applied clearly

9   established federal law erroneously or incorrectly"; rather, that application must also be

10  unreasonable. *Id*. at 411. A federal habeas court making the "unreasonable application"

11  inquiry should ask whether the state court's application of clearly established federal law

12  was "objectively unreasonable." *Id.* at 409.

13       The only definitive source of clearly established federal law under 28 U.S.C. §

14  2254(d) is in the holdings (as opposed to the dicta) of the Supreme Court as of the time of

15  the state court decision. *Id*. at 412; *Clark v. Murphy*, 331 F.3d 1062, 1069 (9th Cir. 2003).

16  While circuit law may be "persuasive authority" for purposes of determining whether a

17  state court decision is an unreasonable application of Supreme Court precedent, only the

18  Supreme Court's holdings are binding on the state courts and only those holdings need be

19  "reasonably" applied. *Id.*

20       The California Court of Appeal, in its opinion on direct review, addressed the sole

21  claim in this habeas action. (*See* Ex. 6.) The Court of Appeal thus was the highest court to

22  have reviewed that claim in a reasoned decision, and it is the Court of Appeal's decision

23  that this Court reviews herein. *See Ylst v. Nunnemaker*, 501 U.S. 797, 803-04 (1991);

24  *Barker v. Fleming*, 423 F.3d 1085, 1091-92 (9th Cir. 2005).

25  **B.    Claims and Analysis**

26       Petitioner's only claim in this action is that there was insufficient evidence to

27  support the conviction for human trafficking. (Am. Pet. at 28.) The specific human

28  trafficking conviction Petitioner challenged on direct appeal was count 5. (Op. at 2.)

4

1    The Court of Appeal reviewed this claim under the following standard of review:

2

3         When determining whether the evidence is sufficient to sustain a
         criminal conviction, "we review the whole record in the light most
4         favorable to the judgment below to determine whether it discloses
         substantial evidence – that is, evidence that is reasonable, credible and of
5         solid value – from which a reasonable trier of fact could find the defendant
         guilty beyond a reasonable doubt." (*People v. Snow* (2003) 30 Cal.4th 43,
6         66.) We presume in support of the judgment the existence of every fact the
         trier of fact reasonably could deduce from the evidence. (*People v. Medina*
7         (2009) 46 Cal.4th 913, 919.) Reversal is not warranted unless it appears
         "'that upon no hypothesis… is there sufficient substantial evidence to
8         support [the conviction].'" (*People v. Bolin* (1998) 18 Cal.4th 297, 331.)
         "'If the circumstances reasonably justify the verdict of the jury, the opinion
9         of the reviewing court that those circumstances might also reasonably be
         reconciled with the innocence of the defendant will not warrant interference
10        with the determination of the jury.'" (*People v. Love* (1960) 53 Cal.2d 843,
         850-51.)
11

12   (Op. at 3.)

13   The Court of Appeal then rejected the claim:

14

15        Defendant concedes the evidence is sufficient to support the finding
     that he deprived Antoinette of her personal freedom by use of physical and
16   verbal violence. However, he claims the prosecution failed to establish that
     the specific intent behind this behavior was to obtain forced labor and
17   services from her. Instead, he argues the violence he directed at her was an
     outgrowth of their troubled romantic relationship.
18

19        Defendant notes Antoinette testified that her relationship with
20   defendant appeared to be serious, as they talked about marriage and had
     shopped for an engagement ring. He also notes she testified the first act of
21   violence occurred only after she discovered him with another girl. He
     argues this evidence shows he reacted to being caught cheating, asserting
22   there was no evidence he beat Antoinette with the intent to obtain forced
     labor and services from her. He also claims the incident in which he
23   pointed a gun at Antoinette and told her she was "messing with [his]
24   money" by encouraging the young girl to leave, "[fails] to establish that the
     intent behind it was to force Antoinette to continue to work as a prostitute."
25

26        Defendant further asserts an assault that occurred in May 2010 "was
27   motivated by jealousy and a sense of betrayal" after she had become
     romantically involved with another man while he was in jail. However, he
28   omits her testimony that during this episode he took away her cell phone

5

and shoes and brought her into his house where he ordered several other females to attack her. She testified he kept her in a converted garage and held her there against her will for two days until she provided him with assurances that she would not leave. Several months later, he abducted her off the street while she was working for another pimp. He physically abused her, and then accused her of being a "snitch" at gun point while at the same time professing his love for her.

There was ample evidence that, while defendant may have had some type of romantic relationship with Antoinette, his acts of violence towards her were done with the intent to keep her working for him. Notably, there was no evidence defendant ever discouraged Antoinette from working for him as a prostitute. Further, she testified that she gave him all the money that she earned by doing so. In addition to the above incidents, she testified generally about his use of physical violence and intimidation against her. She claimed he would "punish" her by choking her, and on one occasion threatened her family because she "knew too much." A defendant's specific intent to commit a crime may be inferred from all of the facts and circumstances disclosed by the evidence. (*People v. Guerra* (2006) 37 Cal.4th 1067, 1130.) It was the jury's task to weigh the conflicting evidence and to decide whether he harbored the relevant intent.

Additionally, the evidence must be viewed in the light most favorable to the jury's verdict. (*People v. Johnson* (1980) 26 Cal.3d 557, 576-577.) Antoinette's subjective understanding of her relationship with defendant represents the only evidence as to their alleged romance. A jury could reasonably infer that defendant's romantic overtures merely represented another form of manipulation designed to keep her working for him. In any event, even if the evidence might be reconciled with a contrary finding, such is not grounds for reversal under the standard of review that we must apply.

(*Id*. at 5-6.)

The Due Process Clause "protects the accused against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged." *In re Winship*, 397 U.S. 358, 364 (1970). A state prisoner who alleges that the evidence in support of his state conviction cannot be fairly characterized as sufficient to have led a rational trier of fact to find guilt beyond a reasonable doubt therefore states a constitutional claim, *see Jackson v. Virginia*, 443 U.S. 307, 321 (1979), which, if proven, entitles him to federal habeas relief, *see id.* at 324.

1      The Supreme Court has emphasized that "*Jackson* claims face a high bar in federal

2   habeas proceedings...." *Coleman v. Johnson*, 132 S. Ct. 2060, 2062 (2012) (per curiam)

3   (finding that the 3rd Circuit "unduly impinged on the jury's role as factfinder" and failed

4   to apply the deferential standard of *Jackson* when it engaged in "fine-grained factual

5   parsing" to find that the evidence was insufficient to support petitioner's conviction). A

6   federal court reviewing collaterally a state court conviction does not determine whether it

7   is satisfied that the evidence established guilt beyond a reasonable doubt. *Payne v. Borg*,

8   982 F.2d 335, 338 (9th Cir. 1992), cert. denied, 510 U.S. 843 (1993); *see, e.g.*, *Coleman*,

9   132 S. Ct. at 2065 ("the only question under *Jackson* is whether [the jury's finding of guilt]

10  was so insupportable as to fall below the threshold of bare rationality"). The federal court

11  "determines only whether, 'after viewing the evidence in the light most favorable to the

12  prosecution, any rational trier of fact could have found the essential elements of the crime

13  beyond a reasonable doubt.'" *Payne*, 982 F.2d at 338 (quoting *Jackson*, 443 U.S. at 319).

14  Only if no rational trier of fact could have found proof of guilt beyond a reasonable doubt,

15  has there been a due process violation. *Jackson*, 443 U.S. at 324; *Payne*, 982 F.2d at 338;

16  *Miller v. Stagner*, 757 F.2d 988, 992-93 (9th Cir.), amended, 768 F.2d 1090 (9th Cir.

17  1985), cert. denied, 475 U.S. 1048, and cert. denied, 475 U.S. 1049 (1986); *Bashor v.

18  Risley*, 730 F.2d 1228, 1239 (9th Cir.), cert. denied, 469 U.S. 838 (1984). "*Jackson* leaves

19  juries broad discretion in deciding what inferences to draw from the evidence presented at

20  trial requiring only that jurors 'draw reasonable inferences from basic facts to ultimate

21  facts." *Coleman*, 132 S. Ct. at 2064.

22      After viewing the evidence in the light most favorable to the prosecution, the Court

23  finds that the state court's rejection of this claim was not unreasonable because a rational

24  trier of fact could have found the essential elements for human trafficking beyond a

25  reasonable doubt. The trial court instructed the jury on the elements of human trafficking

26  pursuant to CALCRIM No. 1243, which required the People to prove that: (1) "defendant

27  either deprived another person of personal liberty or violated the other person's personal

28  liberty"; and that (2) when he did so, "he intended to obtain forced labor or services." (RT

7

1    708.) "Deprivation or violation of personal liberty" was defined as a "substantial and

2    sustained restriction of another person's liberty accomplished by coercion, violence or

3    menace under circumstances in which the person receiving or perceiving the threat

4    reasonably believes that it is likely that the person making the threat would carry it out."

5    (RT 708-09); CALCRIM No. 1243. The trial court also clarified that "[f]orced labor or

6    services" was "labor or services that are performed or provided by a person and are

7    obtained or maintained through force, fraud, duress, or coercion, or equivalent conduct that

8    would reasonably overbear the will of the person." (*Id.*) Lastly, the trial court instructed

9    the jury that, when considering whether or not duress is present, the jury was instructed to

10   consider all of the circumstances, including the age of the other person and her relationship

11   to the defendant. (RT 709.)

12          The state appellate court first noted that Petitioner conceded the evidence was

13   sufficient to support the finding that he deprived Antoinette of her personal freedom by use

14   of physical and verbal violence. *See supra* at 5. Petitioner's argument was that the

15   prosecution failed to establish that the specific intent behind this behavior was to obtain

16   forced labor and service from her, rather than as an outgrowth of their troubled, romantic

17   relationship. *See supra* at 5. In support, Petitioner pointed to the fact that Antoinette

18   testified that their relationship was serious as they had talked about marriage and even

19   shopped for an engagement ring, and that the first act of violence occurred only after she

20   had discovered him with another girl. *Id.* Petitioner also characterized the May 2010

21   assault as a jealous reaction to Antoinette becoming romantically involved with another

22   man while he was in jail. *Id.* However, the state appellate court reasonably found

23   Petitioner's version of events unpersuasive, particularly since he omitted parts of

24   Antoinette's testimony where she described him taking away her cell phone and shoes, and

25   having her assaulted by several females at his house. *Id.* at 5-6. Petitioner also ignored the

26   fact that he had kept Antoinette trapped in his converted garage for two days until he was

27   satisfied she would not leave him. *Id.* at 6. Then several months later, he abducted her off

28   the street while she was working for another pimp. *Id.*

8

1    In addition to the evidence discussed above, the state appellate court reasonably

2    found that there was "ample evidence" that Petitioner's "acts of violence towards

3    [Antoinette] were done with the intent to keep her working for him." *Id.* The evidence at

4    trial included the following: the day after he met her in 2008, Petitioner asked Antoinette if

5    she would work as a prostitute to make money, *see supra* at 2; when Antoinette discovered

6    Petitioner with another female and ran away, he chased her and choked her with his hand

7    around her neck, *id.* at 3; Antoinette gave Petitioner all the money that she earned from

8    prostituting, *id.* at 2, 6; Petitioner was physically violent and intimidated Antoinette, *id.* at

9    6; Petitioner would "punish" her by choking her, *id.*; and he even threatened her family

10   because she "knew too much," *id.* Respondent also points to additional evidence in the

11   record not specifically discussed by the state appellate court: Petitioner dictated to

12   Antoinette who she could communicate with and how to do so, and if Antoinette did not

13   comply, Petitioner would physically or psychologically punish her, (RT 402-03, 436); and

14   when Petitioner discovered that Antoinette had been texting boys her age, he dragged her

15   to the bathroom, head-butted her, and choked her with a belt until she passed out, (RT

16   403). Respondent asserts that a jury could reasonably infer that Petitioner did not want

17   Antoinette to communicate with men who were not customers because it would threaten

18   his business interest in keeping her as his "bottom bitch," i.e., his most reliable earner.

19   (RT 413.)

20   Based on the evidence discussed above and viewing it in the light most favorable to

21   the prosecution, the Court finds that any rational trier of fact could have found the essential

22   elements for human trafficking beyond a reasonable doubt. *See Payne*, 982 F.2d at 338.

23   First, as Respondent argues, Petitioner's use of violence to further his prostitution business

24   was demonstrated by his reaction when he discovered that Antoinette urged a teenaged girl

25   to stop working for him. (Ans. at 8; RT 401.) When he learned of it, Petitioner choked

26   and hit Antoinette, as well as put a gun to her face, saying, "You messing up my money."

27   (RT 401-02.) A jury could infer from this evidence that Petitioner viewed all the girls and

28   women who worked for him, including Antoinette, as tools for his prostitution business

1    and any interference was a threat to his income.  It could also be inferred that each time

2    Petitioner beat and threatened Antoinette, he did so with the intent that she continue to

3    work for him as a prostitute "making his money."  (RT 413.)  This is supported by the fact

4    that the only time Antoinette felt she could stop working for Petitioner was when he was in

5    custody.  (RT 393, 409.)  Even then, Petitioner still tried to coerce her to continue working

6    as a prostitute so that she could send him money while he was jail.  (RT 393.)  Once he

7    was released from custody, Petitioner kept attempting to bring Antoinette back under his

8    control.  (RT 385-91, 411-21.)  The first time was on May 23, 2010, when he kidnapped

9    her, had a group of girls beat her up, and then locked her in his converted garage for

10    several days until she gave him assurances that she would never leave him and continue

11    "making his money."  (RT 413, 416, 418-19, 460.)  A second time on December 23, 2010,

12    Petitioner tracked down Antoinette at night, chased her down a street, and choked her into

13    unconsciousness.  (RT 385-86.)  When she awoke, Petitioner was calling her a snitch and

14    pointing a gun at her face.  (RT 390.)  He then attempted another kidnapping, but fled the

15    scene when the police arrived.  (RT 391.)  Based on these facts, there was ample evidence

16    of a "substantial and sustained restriction" of Antoinette's personal liberty by "coercion,

17    violence or menace."  CALCRIM No. 1243.  Furthermore, there was a clear pattern of

18    violence against Antoinette in furtherance of his prostitution business which satisfies the

19    "forced labor or services" element. *Id.*

20        With respect to Petitioner's assertion that he was driven only by love and jealousy,

21    it is simply outweighed by evidence supporting the inference that he really wanted to keep

22    Antoinette in his life because she was valuable as his "bottom bitch."  (RT 413.)  From the

23    very beginning of their relationship, Petitioner asked Antoinette to prostitute for him. *See*

24    *supra* at 2.  From this basic fact a jury could infer that Petitioner used the relationship as a

25    means of manipulating Antoinette to work for him, which is further supported by the

26    complete lack of any evidence that Petitioner ever discouraged Antoinette from working as

27    a prostitute despite their potential engagement.  With respect to Petitioner's "jealousy"

28    over Antoinette being with someone else, a jury could infer that he really wanted her back

10

1    so that she would continue to prostitute for him. Accordingly, the Court finds that a

2    rational trier of fact could have found the essential elements for human trafficking beyond

3    a reasonable doubt based on Petitioner's use of force to keep Antoinette working for him

4    as a prostitute, in violation of her personal liberty . *See Payne*, 982 F.2d at 338. Put

5    another way, it cannot be said that no rational trier of fact could have found proof of guilt

6    beyond a reasonable doubt based on these facts. *Id.*; *Jackson*, 443 U.S. at 324.

7    Accordingly, the Court finds that Petitioner has failed to overcome the highly deferential

8    standard of *Jackson* to establish a due process violation. 443 U.S. at 324; *Coleman*, 132 S.

9    Ct. at 2064.

10    Petitioner asserts in traverse that Antoinette was not kidnapped and points to

11    inconsistencies in her testimony. (Trav. at 5-8.) He asserts that the "violence [Antoinette]

12    suffered… was not as a result of human trafficking; rather, any violence against [her] was

13    the result of jealousy over potential romantic rivals and tensions arising from their personal

14    romantic relationships." (*Id.* at 8-9.) This argument is without merit because it goes

15    purely towards the weight of the evidence. The only question on federal habeas is whether

16    there is sufficient evidence by which *any* rational trier of fact could find the essential

17    elements of the crime beyond a reasonable doubt. *See Payne*, 982 F.2d at 338. As

18    discussed above, there was sufficient evidence that Petitioner used violence and coercion

19    to force Antoinette to prostitute for him against her will.

20    Based on the foregoing, the state court's rejection of this claim was not contrary to,

21    or an unreasonable application of, clearly established Supreme Court precedent, nor was it

22    based on an unreasonable determination of the facts in light of the evidence presented. 28

23    U.S.C. § 2254(d). Petitioner is not entitled to federal habeas relief based on this claim.

24

25                                            **IV. CONCLUSION**

26    After a careful review of the record and pertinent law, the Court concludes that the

27    Petition for a Writ of Habeas Corpus must be **DENIED**.

28

11

1    Further, a Certificate of Appealability is **DENIED**.  *See* Rule 11(a) of the Rules

2 Governing Section 2254 Cases.  Petitioner has not made "a substantial showing of the

3 denial of a constitutional right."  28 U.S.C. § 2253(c)(2).  Nor has Petitioner demonstrated

4 that "reasonable jurists would find the district court's assessment of the constitutional

5 claims debatable or wrong."  *Slack v. McDaniel*, 529 U.S. 473, 484 (2000).  Petitioner may

6 not appeal the denial of a Certificate of Appealability in this Court but may seek a

7 certificate from the Court of Appeals under Rule 22 of the Federal Rules of Appellate

8 Procedure.  *See* Rule 11(a) of the Rules Governing Section 2254 Cases.

9    The Clerk shall terminate any pending motions as moot, enter judgment in favor of

10 Respondent, and close the file.

11    **IT IS SO ORDERED**.

12 Dated: 7/11/2018

   BETH LABSON FREEMAN
13 United States District Judge

25 Order Denying Petition for Writ of Habeas Corpus
   P:\PRO-SE\BLF\HC.16\03270Hicks_denyHC

12